AMERICAN FIRE & CASUALTY
CO. v. SCOTT.

No. 9852.

Court of Civil Appeals of Texas. Austin.

Feb. 8, 1950.

Supplemental Opinion Feb. 15, 1950.

Frank D. Kerbow, of Austin, for appellant.

McKay & Avery, of Austin, for appellee.

HUGHES, Justice.

American Fire and Casualty Company insured, against theft, a Pontiac Station Wagon owned by appellee, Spencer J. Scott. Alleging that the car had been stolen on or about June 20, 1948, and later found in a damaged condition, appellee sued the insurance company, and, in a non-jury trial, recovered judgment for $789.95.

Appellant's answer consisted of a general denial, special denials to the averments that the car was in good mechanical condition and of an actual cash value of $1,200 on June 20, 1948. Affirmatively it was pleaded that on the date of the alleged theft the car was under bailment and a conditional sale contract, and that liability of the company was excluded under the terms of the policy. Also, specific allegations were made that many parts of the car were in bad condition on June 21, 1948, and that liability therefor was excluded under a clause of the policy which provided that it did not apply to any "damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage is the result of other loss covered by this policy."

Appellant also pleaded the following limitation of liability as contained in the policy: "The limit of the company's liability for loss shall not exceed the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss, nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, nor the applicable limit of liability stated in the declaration."

■ It is contended that the evidence does not show the car to have been stolen. Appellee testified, without objection, that the car was "stolen" on June 21, 1948. Later he learned, through the Sheriff's office, that the car had been found in Floresville, Texas. The policy sued on insured Scott against the loss of his car by "theft," the legal elements of which are not given. When referring to property, "stolen" includes property acquired by "theft." Art. 1425, Vernon's Ann.P.C. Thus the language of the witness is no more generalized than is the language of the policy. Furthermore, this evidence was an unobjected to shorthand rendition of the facts. The point is overruled.

The policy sued on provided that it did not apply "while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in the policy." With respect to the alleged breach of this policy provision, the evidence shows: Scott, desiring to sell this car, left it on a used car lot, and at the same time left with the proprietor of the lot, Smith Brothers, transfer papers which Scott signed in blank and which did not bear a notary's certificate. The car was stolen from this lot.

■ It is clear that this evidence does not show a sale or encumbrance of any character. While not so apparent, we are of the opinion that it does not show a "bailment lease." This term has not, to our knowledge, been defined by a Texas court, although the term has been before our courts in two cases: Royal Insurance Company, Ltd. v. Wm. Cameron Company, Tex. Civ.App., 184 S.W.2d 936 (Writ Ref.), and West American Insurance Company v. First State Bank of Rio Vista, Tex.Civ. App., 213 S.W.2d 298.[1]

It seems that the term "bailment lease" originated in Pennsylvania, where under the Uniform Conditional Sales Act, 69 P.S. § 361 et seq., legal title to property cannot be retained by the vendor to secure payment of the unpaid purchase price, such Act, however, exempting bailments and leases. The method adopted in Pennsylvania, and sustained by its courts, of evading this law is described in General Motors Acceptance Corp. v. Horton, 3 Cir., 85 F.2d 452, 453: "The contract is in the form of a lease and provides for a definite term, a

---

1. In this latter case in quoting the policy a comma appears between the words "bailment" and "lease". We are informed that such comma is not found in the original policy involved in that case.

fixed rental, and an agreement for the return of the automobile at the end of the term." The so-called rentals amount to more than the regular purchase price of the automobile. "When the total rentals were paid, the 'lessee' either had to surrender the automobile, or he could purchase it for the nominal sum of $1. * * * It is evident that the parties to the contract intended by it to accomplish two results: First to retain, in the lessor, title to the automobile as against the bankruptcy or other unfortunate circumstances of the lessee; and, secondly, to provide that the lessee might, after payment of all the rentals, purchase the automobile for a nominal sum. * * * this transaction in fact, though not in form, amounted to a conditional sale. But to construe such contracts as bailment leases is a policy, regardless of what may be thought of it as a principle of law or business, which has long been pursued in Pennsylvania, and her courts have uniformly sustained them as bailment leases."

See 8 C.J.S., p. 220.

If the term "bailment lease" is to be given the same meaning in Texas as it has in Pennsylvania, then it is obvious that the facts in this case do not show a "bailment lease." That such meaning should be given it is supported by the context of this exclusion in the policy which seems to encompass only financial encumbrances of like character as mortgages and conditional sales. A "bailment lease," as known in Pennsylvania, is of this character.

We are of the opinion, however, that if the term "bailment lease" means "bailment" only, then that no bailment exists here. The essence of a bailment is a contract, either express or implied. There was no contract here, either express or implied. There was no obligation on the part of the lot owner to try to sell the car and there was no agreement on the part of Scott to leave the car on the lot. He could remove it at will. All that the evidence shows is that the car was left on the lot with the lot owner's permission, and as the best method of finding a purchaser for it, either by Smith Brothers or Scott. There was no contract concerning the possession or custody of this car and hence there was no bailment.

All of the remaining assignments except one, and it need not be considered, relate to the amount of damages.

The amount of the judgment, $789.-95, was found by the trial court to be the actual cost of restoring Scott's car to the condition it was in immediately prior to the theft; that such repairs were necessary and that $789.95 was a reasonable charge therefor. These findings were based upon the testimony of M. B. Jenks, service manager for Smith Brothers Automobile Company. He was familiar with the car immediately before it was stolen and after it was returned to Austin. He testified that the parts prices were obtained from the Pontiac dealer, who quoted him current retail prices. It is not certain that these parts were new or used. The burden was on appellee to prove the cost of repairing the car with parts of "other like kind and quality, with deduction for depreciation," this being a limitation of liability expressly pleaded by appellant. Rule 94, Texas Rules of Civil Procedure; Imperial Life Ins. Co. v. Thornton, Tex.Civ.App., 138 S. W.2d 295 (Writ Dis.). In our opinion appellee failed to discharge this burden.

Appellant has suggested that a remittitur be required, and accordingly it is ordered that this cause be reversed and remanded unless appellee files a remittitur of $222.18, being 40% of the recovered cost of parts, within ten days from this date.

Reversed and remanded unless remittitur filed.

### Supplemental Opinion

PER CURIAM.

Our alternative order requiring remittitur of $222.18 having been complied with by appellee and such remittitur having been filed, it is ordered that appellee's judgment be reduced by $222.18, and as modified the judgment of the trial court is affirmed.

Costs of appeal are assessed one-half to appellant and one-half to appellee.

Modified and affirmed.