MANHATTAN FIRE & MARINE INSUR-
ANCE COMPANY, Appellant,

v.

G. H. MELTON, Appellee.

No. 7165.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 20, 1959.

Rehearing Denied Nov. 17, 1959.

Hardy Moore, Paris, for appellant.

Howard S. Smith, Sulphur Springs, Woodrow H. Edwards, Mt. Vernon, for appellee.

FANNING, Justice.

G. H. Melton, appellee herein, sued appellant insurance company on a policy of fire and extended coverage insurance, claiming that his residence in Sulphur Springs was damaged on May 23, 1957, by windstorm, hail and wind-driven rain, and recovered judgment for $982.50, pursuant to a jury verdict upon special issues. Appellant insurance company's motion for new trial was overruled and it has appealed.

Appellant presents two points upon appeal. Its first point reads as follows:

"The error of the trial court in its charge to the jury in applying as the measure of damages the cost of repairs instead of requiring damages to be measured within the framework of the value of the property at the time of loss, ascertained with proper deduction for depreciation, which would have been much less than the cost of repairing or replacing the property, liability being limited to the smaller of the two accounts."

Appellee counters appellant's first point with his counterpoints 1, 2 and 3, as follows:

"1. The trial court was correct in charging as it did on cost repair, since actual cost, less depreciation, if lower than cost of repair, is a limitation of liability on the part of defendant and the limitation of liability was not affirmatively pleaded.

"2. Actual cost less depreciation is not a proper measure of damages in the instant case because it is impracticable to use such measure.

"3. By failing to insist on plaintiff using actual cost, less depreciation, while the case was pending from September 25, 1957, until trial time, defendant waived its right to rely on such measure of damages."

The policy sued upon provided maximum coverages of $4,000 on appellee's residence building and $2,500 on appellee's household goods and contained among others the following provisions:

"Subject to Article 6.13 of the Texas Insurance Code—1951, liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture; nor shall it exceed the interest of the insured, or the specific amounts shown under 'Amount of Insurance.'"

Article 6.13 of the Texas Insurance Code, V.A.T.S., is not applicable to the case at bar because it was undisputed that the loss to the dwelling in question was not total but was only partial.

The only measure of damages pleaded by plaintiff in his original petition filed September 6, 1957, was as follows:

"By reason of said windstorm and hail, and as a direct result thereof, all of the aforesaid damage was done, and the actual and necessary cost of repairing and replacing the property so damaged with material of like kind and quality within a reasonable time after such loss was and is the total sum of $1,212.14."

By trial amendment plaintiff pleaded the identical measure of damages, however raising the amount from $1,212.14 to $1,329.54.

Defendant in its amended answer, filed January 26, 1959, which is the only pleading of defendant shown in the record, which answer contains no special exceptions to the measure of damages pleaded by plaintiff, generally denies the allegations of plaintiff's original petition and makes certain special denials. We quote from said amended answer as follows:

"1. Defendant denies all and singular the allegations in said petition contained, and demands strict proof.

"2. Defendant denies the plaintiff's house at 907 South Davis Street, Sulphur Springs, Texas, was damaged by windstorm, hail or rain on the 23rd day of May, 1957, denies that the damage which occurred was insured against according to the terms and provisions of the policy of insurance described in plaintiff's petition, and says any damages claimed by plaintiff then to have occurred did in fact occur, in whole or in part, on a prior and different occasion, and prior to the issuance of defendant's contract of insurance to the plaintiff. Defendant's policy of insurance provided in part that only direct loss by windstorm, hurricane or hail was insured against, and not loss caused by rain, wind driven or otherwise, unless wind or hail first made an opening in the walls or roof of the building, in which event the defendant should be liable only for such loss to the interior of the building as was caused immediately by rain entering through such opening, and said contract of insurance further obligated plaintiff as the insured person to protect the property after loss from further damage. None of the foregoing provisions and conditions was observed or complied with by plaintiff, and defendant accordingly pleads the same in bar and diminution of plaintiff's recovery.

"Wherefore, defendant prays that plaintiff take nothing by his suit, and that it go hence without day with its cost."

Defendant nowhere affirmatively pleaded that the actual cash value of the property in question, less depreciation, was less than the measure of damages pleaded by plaintiff, and nowhere pleaded the policy provisions in question as a limitation upon the amount of damages to be recovered by plaintiff.

■ We think it is clear that the above quoted policy provision is a *limitation upon the amount of damages for which the insurance company may be liable.* In this connection, see Home Ins. Co. v. Fouche, Tex.Civ.App., 149 S.W.2d 977, 978, and authorities therein cited, wherein it is stated:

"The contract of insurance sued upon contains the following provisions: 'This Company's liability for loss or damage to the automobile shall not exceed the actual value thereof at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated accordingly, with the proper deduction for depreciation however caused, and without compensation for loss of use, and shall in no event exceed the limit of liability, if any, stated in Item 3 of the Declarations, nor what it would then cost to repair or replace the automobile, or parts thereof, with other of like kind and quality, such ascertainment or estimate shall be made by the insured and this Company, or if they differ, then by appraisal as hereinafter provided.' *The above quoted provisions constitute limitations upon the amount for which the insurer may be held liable.* American Indemnity Co. v. Jamison, Tex.Civ.App., 62 S.W.2d 197; Home Ins. Co. v. Ketchey, Tex.Civ.App., 45 S.W.2d 350; Maryland Motor Car Ins. Co. v. Smith, Tex.Civ.App., 254 S.W. 526; Automobile Underwriters of America v. Radford, Tex.Civ.App., 293 S.W. 869; Northern Assurance Co., Ltd. v. Herd, Tex.

Civ.App., 273 S.W. 884." (Emphasis added.)

Also in this connection see Am. Fire & Cas. Co. v. Scott, Tex.Civ.App., 228 S.W. 2d 324, 326, wherein it is stated:

"* * * The burden was on appellee to prove the cost of repairing the car with parts of 'other like kind and quality, with deduction for depreciation,' this being a limitation of liability expressly pleaded by appellant. Rule 94 Texas Rules of Civil Procedure; * * *"

■ There was no pleading by either plaintiff or defendant as to actual cash value, less depreciation, as a measure of damages, or by defendant as a limitation upon liability, and likewise no issue on the matter was submitted to the jury (although requested by appellant) and this issue was not tried by consent of the parties and without objection. We are of the opinion that under the record in this case appellee's first counterpoint should be sustained under the authority of the case of T.I.M.E., Inc. v. Maryland Casualty Co., 157 Tex. 121, 300 S.W.2d 68, 72, and we quote from the Supreme Court's opinion in the T.I.M.E. case, supra, as follows:

"Petitioner contends that respondent lost its right to urge as a defense that Munroe was not an insured because it did not specifically allege in its answer that he was not an insured under the terms of the policy and did not assert that fact as a defense to the suit until it filed its second motion for judgment notwithstanding the jury's verdict. The question is governed by Rule 94, Texas Rules of Civil Procedure. That Rule requires affirmative pleading of certain defenses and continues: 'Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall

never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability; provided that nothing herein shall be construed to change the burden of proof on such issue as it now exists.'

"Respondent argues that the matter of who is insured under a policy of insurance is a part of the insurer's 'basic promise', and that it was not the purpose of the quoted provisions of Rule 94 to require an insurer to allege that the person inflicting an injury was not covered by the basic promise. In support of its argument respondent cites Alamo Cas. Co. v. Richardson, Tex.Civ.App., 235 S.W.2d 726, writ refused, n. r. e., and Preferred Life Ins. Co. v. Stephenville Hospital, Tex.Civ.App., 256 S.W.2d 1006, no writ history. The case first cited undoubtedly lends support to respondent's position. Petitioner, on the other hand, argues that the quoted provisions of Rule 94 require an insurer to plead specifically all exceptions to its 'general liability' under a policy and that paragraph (a) of Section III provides an exception to respondent's general liability. In support of its argument petitioner cites National Security Life & Casualty Co. v. Benham, Tex.Civ.App., 233 S.W.2d 334, writ refused, n. r. e.; Camden Fire Ins. Ass'n v. Moore, Tex.Civ.App., 206 S.W.2d 104, writ refused, n. r. e., and National Life & Accident Ins. Co. v. Leverett, Tex.Civ.App., 215 S.W.2d 939, writ dism. We do not regard any of the cases cited by the parties as binding on this Court in its construction and application of the Rule and consequently see no need to analyze them.

"Before the adoption in 1941 of our present Rules of Civil Procedure a system of pleading had developed in this state in which there was much 'sand-bagging' of courts as well as of opposing litigants. The pleading device known as a 'general demurrer' coupled with the general denial method of putting in issue rebuttal defenses and defenses based on exceptions and exclusions led to innumerable reversals, interminable delays and unnecessary expense. In adopting the Rules of Civil Procedure this Court sought to eliminate these roadblocks to a sound administration of justice. The general demurrer was abolished. Rule 90, Texas Rules of Civil Procedure. By Rule 279 a party was denied the right to a submission of special issues on rebuttal defenses in the absence of special pleading. Luther Transfer & Storage, Inc. v. Walton, 156 Tex. 492, 296 S.W.2d 750, 60 A.L.R.2d 1087. In the same spirit the quoted provisions of Rule 94 were intended to eliminate hidden defenses to liability based on exceptions contained in insurance policies. *The ultimate object of all of these changes in rules of pleading was to require a litigant, in so far as was reasonably possible, to put openly in issue on the trial of a case all of the reasons, in fact and in law, why the other party should not prevail.*

"Before the adoption of the Rules of Civil Procedure one suing on or for benefits under a policy of insurance was required to negative, in his pleading as well as in his proof, all of the policy exceptions to liability. Failure to do so was fatal. * * * The quoted provisions of Rule 94 were intended to supersede this rule of pleading established by court decisions.

"Rule 94 requires an insurer, on penalty of waiving the issue, to allege specifically that the loss was due to a risk or cause coming within a particular exception to its general liability. *The exceptions which the insurer must specifically plead are those which limit its*

*general liability for loss caused by the general hazards covered by the policy.* In this case the general hazard covered by the policy, as applied to the facts, was the hazard of accidental injuries inflicted on persons through the use of the Ford automobile. Respondent's general liability was to pay on behalf of Munroe all sums he became obligated to pay as damages for such accidental injuries. By paragraph (a) of Section III respondent limited its general liability by providing, in effect, that the hazard of accidental injury to a fellow employee, in the course of his employment, arising out of the business of the employer was not covered by the policy. It thus appears that the provision limiting respondent's liability contained in paragraph (a) was precisely the type of limiting provision which respondent was required to plead on penalty of waiving its right to urge that provision as a defense to the suit.

"Respondent argues, ultimately, that whether an exclusionary clause is a part of the 'basic promise' which the insurer is not required to plead or is an exception to general liability which the insurer is required to plead is 'usually entirely up to the draftsman' of the policy, and depends on the section of the policy under which the clause is placed. Under that theory the quoted provisions of Rule 94 could be nullified by including all exceptions to general liability under the definition of an insured. We cannot approve a theory that would accomplish that result.

"The judgments of the Court of Civil Appeals and trial court are reversed and the cause is remanded to the trial court for the entry of judgment for petitioner." (Emphasis added.)

The evidence shows that plaintiff's damages were partial, that he sustained damages to the roof (and understructure thereof) of his dwelling house, to wallpaper within his house and to doors, windows and facings of his house. Plaintiff presented proof of his various damages in accordance with the measure of damages he specially pleaded and the jury in response to the damage issues submitted found that the reasonable costs of repair of these items of damages in Hopkins County, Texas, with material of like kind and quality within a reasonable time after said loss, were the various amounts shown therefor in the record, and the trial court after making certain deductions provided by the policy, entered judgment for plaintiff for $982.50, which was less than the amounts of damages testified to by plaintiff's witnesses. Appellant does not present any points attacking these findings of the jury on the grounds of "no evidence," "insufficient evidence" or that such findings were "so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust."

Defendant objected to the damage issues submitted by the trial court and requested the following issues which were refused by the trial court:

"What do you find from a preponderance of the evidence was the actual cash value of the roof on plaintiff's house on May 23, 1957, immediately prior to the loss, if any, figured with proper deduction for depreciation.

"What do you find from a preponderance of the evidence was the actual cash value of the paper on the ceilings and walls of such rooms of plaintiff's house as you may find from a preponderance of the evidence were damaged by hail or windstorm on May 23, 1957, immediately prior thereto, figured with proper deduction for depreciation.

"What do you find from a preponderance of the evidence was the actual cash value of such of the doors, windows and facings of plaintiff's house as you may find necessarily needed replacement on account of damage thereto on May 23, 1957, immediately prior

344

to such damage, figured with proper deduction for depreciation."

In the ordinary case where the pleadings and the evidence authorized same, appellant's requested issues would be the proper measure of damages to submit to the jury. See Home Ins. Co. v. Fouche, supra, and American Indemnity Co. v. Jamison, Tex.Civ.App., 62 S.W.2d 197. However, it has been frequently held that in proper cases where it is impracticable to determine the market value of the property damaged, the cost of reproduction, replacement or repair with materials of like kind and quality within a reasonable time after the loss are proper factors to be considered in determining the amount of loss to be paid to the insured. In this connection see the following authorities: 61 A.L.R.2d 714, 715; 45 C.J.S. Insurance § 917, pp. 1019–1020; Texas Moline Plow Co. v. Niagara Fire Ins. Co., 39 Tex.Civ.App. 168, 87 S.W. 192.

In 61 A.L.R.2d at pages 714–715, supra, it is stated:

"The cases discussed in this annotation are concerned with the provision in an insurance policy limiting the liability of the insurer to the 'actual cash value' of the insured property at the time of loss.

"As the cases hereinafter set out indicate, the actual cash value clause in policies does not purport to fix any rule for determining loss, *but simply imposes a limitation upon the amount which may be awarded in any case.*

"*Where property is of such nature that its market value can be readily determined, market value has frequently been applied as the test or criterion of actual cash value of property at the time of loss, under policies insuring to that extent. In a few cases, the courts although recognizing that the market value test would ordinarily be applicable, have refused to apply it where, under the existing circumstances, this*

*test of actual cash value would fail to properly indemnify the insured. Another test or criterion, which has been employed in a great number of cases to ascertain the actual cash value of the insured's property at the time of loss, is the replacement or reproduction cost of the property lost.*

"In recent years, a number of courts, seeking to effectuate more complete indemnity, have adopted a third method, the broad evidence rule, to determine actual cash value of property at the time of loss. Under this rule, the trier of facts may consider any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of loss.

"*Generally, it may be said that the proper test or criterion of actual cash value in a particular case depends upon the nature of the property insured, its condition, and other circumstances existing at the time of loss.*" (Emphasis added.)

In 45 C.J.S. Insurance § 917, pp. 1019–1020, supra, it is stated:

"It has been said that all the courts have experienced great difficulty in construing policy provisions where a partial loss has been suffered. In case of a partial loss, the insurer is liable under the ordinary policy, to pay the full amount of the loss or damage, not exceeding the amount of insurance specified in the policy. This rule applies notwithstanding the valued-policy law, which applies, as discussed supra § 916, only where there has been a total loss, insurer being liable under a valued policy, in case of a partial loss, in proportion to the valuation of all property of the same class.

"In the absence of different provisions in the policy, the measure of recovery for a partial loss is the difference between the value of the property

immediately before the fire and its value immediately thereafter. *It has been held that such measure is the reasonable cost of restoring or repairing property damaged solely by fire to as good condition as before the fire, and not the amount actually expended for repairs.*" (Emphasis added.)

██ Applying the above principles of law to the facts in this case we have reached the conclusion that it would have been impracticable under the facts in this case to determine the actual cash value (ascertained with proper deduction for depreciation) of the old roof on plaintiff's house which did not leak and was still giving good service when it and its understructure were partially damaged, and of plaintiff's wallpaper which was usable and dependable until it was partially damaged, and of plaintiff's used doors, windows and facings which were usable and dependable until they were partially damaged. While the damages awarded by the jury may perhaps appear to be liberal, they are less than the amounts testified to by appellee's witnesses, and as hereinbefore stated, appellant has raised no points attacking the sufficiency of the evidence to support said amounts. It is our opinion that under this record appellee's second counterpoint should be sustained.

█ We are also of the further opinion that appellee's third counterpoint should be sustained under this record. In this connection see the case of North River Ins. Co. v. Rippy, Tex.Civ.App., 23 S.W.2d 853.

█ Appellant's first point is deemed as not presenting reversible error under the record in this case and is respectfully overruled.

Appellant's second point reads as follows:

"The trial court's error in permitting plaintiff to introduce in evidence a copy of the Sulphur Springs newspaper giving an account of the windstorm on May 23, 1957, over defendant's objection it was hearsay."

The newspaper article in question, while hearsay and while giving a more detailed account of the storm, was largely and in the main cumulative of other (unobjected to) evidence already in the record to the effect that there was a severe storm in Sulphur Springs on the day in question. Mr. Bowersock, the agent of appellant insurance company, a witness for defendant, admitted knowledge of the storm and among other things testified as follows:

"Q. Mr. Bowersock, you adjusted, investigated, inspected many losses which you were satisfied occurred in Sulphur Springs on the 23rd day of May, 1957, didn't you? A. Yes.

"Q. All right. Throughout the city, didn't you? A. Yes sir.

"Q. Damage to houses in the south part of town as well as the north part, didn't you? A. Yes sir.

"Q. Yes. Damage to roofs by wind in the south part of town as well as in the north, didn't you? A. Yes.

"Q. In fact, you know, don't you, that the City of Sulphur Springs, on the 23rd day of May, 1957, the date that the damages were alleged to have occurred in this lawsuit, that the worst windstorm in years slammed into Sulphur Springs on that Thursday morning, don't you? A. Yes sir.

"Q. * * * All right, sir. Now, don't you know that the winds ripped trees, roofs and signs from buildings? A. True.

"Q. And rain fell in torrents? A. I am not sure about the rain.

"Q. All right. Don't you know that tornado funnels were reported sighted in the sky by several persons on that morning? A. I think that's correct.

"Q. Don't you know the power lines shorted out on account of under

**346**

the impact of falling tree limbs throughout the city? A. True.

"Q. Don't you know it was of such voracity that some parents rushed to school to take home their children?

"Mr. Moore: Isn't this going a little far afield, Your Honor?

"Mr. Smith: Asking if he knows.

"The Court: It's limited to the witness' knowledge, I will let him answer.

"The Witness: You say voracity but you meant velocity.

"Q. Maybe I'm in error, I mean that it was so severe. A. All right, yes.

\* \* \* \* \* \*

"Q. Did you know that it was of such severity that two line crews from your own city of Paris came to Sulphur Springs that afternoon to help straighten up the damage so the people of this city could have power? A. I didn't know but I saw some extra crews here.

"Q. All right. Did you know that it was of such severity that some 200 sections of sheet iron were blown off the west room of the main building of the Red Star Fertilizer Plant here in Sulphur Springs that day? A. Yes sir."

Also Ralph Hill, a weather observer and witness for defendant had also previously testified as to the severity (and various details) of the storm in question. Likewise some of appellee's witnesses had already testified as to the severity of the storm in question and various details with respect thereto.

After carefully considering the matter complained of in appellant's second point in the light of the record as a whole in this case, it is our considered judgment that the matter complained of therein was not reasonably calculated to cause and probably

did not cause the rendition of an improper judgment in this cause. See the following authorities: Rules 434 and 503, Texas Rules of Civil Procedure; Condra Funeral Home v. Rollin, Tex., 314 S.W.2d 277; Walker v. Texas Emp. Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298; Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596. Appellant's second point is deemed as not presenting reversible error under this record and is respectfully overruled.

Finding no reversible error in the record, the judgment of the trial court is affirmed.