**IMPLEMENT DEALERS MUTUAL INSURANCE COMPANY, Appellant,**

v.

**T. L. COX et ux., Appellees.**

No. 14302.

Court of Civil Appeals of Texas.

Houston.

Feb. 27, 1964.

Rehearing Denied March 19, 1964.

Thompson, Coe, Cousins & Irons, R. B. Cousins, Dallas, for appellant.

C. Mann Gregg, Texas City, for appellees.

WERLEIN, Justice.

This suit was brought by appellees upon an insurance policy issued by Implement Dealers Mutual Insurance Company in the sum of $8,000.00, to recover for damage to their home in Texas City resulting from Hurricane "Carla" on or about September 11, 1961. From a judgment in the sum of $2,161.25 entered in favor of appellees based upon the jury verdict, appellant has perfected its appeal.

■ To Special Issue No. 1 the jury found that the damage done to the residence of appellee Cox was directly due to the winds of Hurricane Carla. Appellant contends that such finding by the jury is not supported by any evidence and is against the great weight and preponderance of the evidence. We have read the entire statement of facts and find that there is ample evidence supporting the jury's finding, even though we should wholly disregard the testimony of appellee Cox with respect to damages. The finding of the jury is not against the great weight and preponderance of the evidence. In Re King's Estate, 1951, 150 Tex. 662, 244 S.W. 2d 660.

Appellant asserts that such finding is based largely upon perjured testimony given by appellee Cox. We fail to find in the record evidence which would warrant a finding of perjured testimony on the part of Mr. Cox although there are some apparent conflicts in his testimony. Appellant elicited from appellee Cox that its insurance adjuster took a picture of appellees' home on October 6, 1961, more than three weeks after Carla, and at such time the T. V. antenna on appellees' house was standing erect, whereas the picture introduced by appellees in evidence, taken at a yet later date, showed the antenna was down and lying on the roof of the house. Appellee Cox testified the antenna was damaged and he had to get a new one installed.

Appellant inquired why and how the October 6, 1961 picture, which was taken after Carla, showed the antenna standing erect and the subsequent picture introduced by appellees showed the antenna down. Appellee could not explain the discrepancy. He did testify unequivocally that neither he nor his family pulled the antenna down, and that he didn't know how it got down. His statement seems logical since if appellee Cox were undertaking to show that Carla had blown down the antenna, it does not seem likely that he would have let it remain erect for everyone to see for nearly a month after Carla.

Moreover, we do not find in the record that Cox ever testified definitely that Carla blew over the antenna. He did testify that Carla damaged it. The evidence shows that considerable damage was done to the roof of appellees' home and that repairs were made some time after appellees' pictures were taken. Cox also testified that his new antenna had been installed by Bay Radio. It probably would have been an easy matter for appellant to disprove Cox's testimony, if it was false, by calling Bay Radio. This was not done. Cox could not remember dates, and much of his testimony was indefinite as to time. This is not too difficult to understand, however, since the trial was about one and a half years after the damage by Carla. On cross-examination Cox was asked:

"Q Am I correct then in assuming that you have no explanation as to why the earlier picture shows the antenna erect and the later picture shows the antenna down?

"A No more than I know that it was blown down or torn down in some way that I had nothing to do with, and I had to have another antenna put up."

■ The evidence shows that the policy excluded recovery for damage to "radio

or television towers and antennas." The purpose of the appellant's examination was to try to establish that Cox was lying. The jury heard all the testimony and was in a better position to pass upon the truth or falsity of Cox's testimony and his credibility than is this Court. The law is well settled that jurors may accept some parts of a witness's testimony and reject other parts, when the testimony is inconsistent, contradictory, contrary to physical facts, or such as to create a doubt as to its truthfulness, or because of the interest of the witness. Aetna Ins. Co. v. English, Tex. Civ.App.1947, 204 S.W.2d 850, and authorities cited; 45 Tex.Jur., p. 281, Witnesses, Sec. 345; 14 Baylor Law Review, pp. 371–372.

The jury found in answer to Special Issues Nos. 2 and 3, respectively, that the actual cash value of the Cox residence immediately before Carla was $8,000.00, and immediately after, was $5,000.00. Appellant complains of Issue No. 3 on the ground that it fails to limit the jury to insured perils and fails to prohibit the jury from considering damage occurring as a result of a combination of causes or perils some of which might not be insured against under the policy. The jury had already found, in answer to Special Issue No. 1, that the damage, if any, done to appellees' residence was directly due to the winds of Hurricane Carla.

■ It is our view that the court did not err in submitting Special Issues Nos. 2 and 3 as was done. The law is well settled in Texas that the measure of damages under an insurance contract insuring a dwelling, when the loss is not total, is the difference between the value of the property immediately before and immediately after the occurrence of the loss and damage, within the amount of the policy. German Ins. Co. v. Everett, 1898, 18 Tex. Civ.App. 514, 46 S.W. 95, writ den.; St. Paul Fire & Marine Ins. Co. v. McRae, Tex.Civ.App., 98 S.W.2d 363; Millers Mu-

tual Fire Ins. Co. of Texas v. Eggleston, Tex.Civ.App.1962, 357 S.W.2d 766.

It will be noted that while the difference in the value of the property immediately before and immediately after Carla was found to be $3,000.00, the court entered judgment in favor of appellees in the sum of only $2,161.25. This was because in answer to Special Issue No. 4, which inquired as to the reasonable cost of repairing the damage sustained as a direct result of Carla, taking into consideration only such damage sustained as a direct result of wind, and damage to the interior of the dwelling from rain, whether wind driven or not, coming through an opening or openings made by the wind in its walls or roof and caused immediately by rain entering the building through such opening or openings, the jury found $2,261.25. From this amount the court deducted $100.- 00 because of the $100.00 Deductible Clause in the policy. The policy contains the further limitation that the company's liability shall not exceed "the amount it would cost to repair or replace the building with material of like kind and quality within a reasonable time after the loss * * *"

Appellant complains of Special Issue No. 4 inquiring about the cost of repair of the Cox residence for the reason that it did not limit the jury to a consideration of the proper contract limitation of liability and did not instruct the jury to make a reasonable allowance for depreciation in place of repair with new materials. The policy provides:

"* * * liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss * * *"

■ We are in accord with the decision of the Waco Court of Civil Appeals in

Gulf Insurance Company v. Carroll, 1959, 330 S.W.2d 227, in holding that the foregoing provision provides two ways in which the insured may plead and prove damages. The court held that the first clause would certainly be available and apply to an insured whose house or building had been destroyed and where it was a total loss. The second clause, however, applies when the insured has sustained a partial damage to his building. We find no merit, therefore, in appellant's contention that there should have been an instruction with respect to a proper deduction for depreciation. See also Manhattan Fire & Marine Insurance Co. v. Melton, Tex.Civ.App., 1959, 329 S.W.2d 338, writ ref., n. r. e.

■■ We are of the opinion that had there been a proper objection, the court in submitting Issue No. 4 should have inserted in it the provision in the second clause aforesaid by adding after the phrase "reasonable cost for repairing the damage, if any," the words "with material of like kind and quality within a reasonable time after such loss, if any, * * *" This would have complied with the limitation in the policy. It is our view, however, that the objection made to Special Issue No. 4 did not point out distinctly the matter or omission in the Issue now complained of, and hence any error therein will be deemed waived. Rule 274, Texas Rules of Civil Procedure. The court should not be required to read the entire policy to determine what has been omitted in a special issue. The burden is on the one objecting to point out specifically the defect or omission in the issue and thus distinctly apprise the court thereof.

We overrule appellant's Points 7 and 8 complaining that there was no evidence and insufficient evidence to sustain the jury's answer to Special Issue No. 4. The only disinterested, qualified witness was Mr. Leo Ervin, who testified as to the estimate he made of the damage done appellees' home. He estimated the damage from the winds of Carla and water coming through roof leaks, vents and windows to be $2,-261.25. The evidence shows that many shingles were blown off of appellees' residence. The estimate did not include a new roof but only replacing wood shingles that were blown off the roof and damage to the ridge and leaks in the roof caused by wind. It will not be necessary to set out Mr. Ervin's estimate. It will suffice to say that the evidence shows that the items of damage listed were attributable to the winds of Carla and rain entering, in the main part, through openings created thereby. It is true that Mr. Ervin testified that it was possible that some wind driven rain came through the doors, vents and louvers in the house and that he had an opinion that it did. He also testified, however, that virtually the same damage would have been done if it had not come through vents, louvers and doors. This evidence is uncontradicted.

Mr. Ervin further testified that the estimate was for repairs which would have left the Cox residence in about the same condition it was before. He also testified that the dwelling in question was in a good state of repair before Carla and that in fact Mr. Cox had just, or not too long before, redone the complete house. In Crisp v. Security National Insurance Co., Tex.Sup.1963, 369 S.W.2d 326, 328, the court said:

"Indemnity is the basis and foundation of insurance coverage not to exceed the amount of the policy, the objective being that the insured should neither reap economic gain nor incur a loss if adequately insured."

■ We have concluded that the finding of the jury to Special Issue No. 4 is supported by the evidence and that it is not against the great weight and preponderance of the evidence.

Judgment affirmed.