Charles **LERMAN**, Appellant,

v.

**IMPLEMENT DEALERS MUTUAL INSURANCE COMPANY**, Appellee.

No. 14401.

Court of Civil Appeals of Texas.

Houston.

Sept. 10, 1964.

Rehearing Denied Oct. 8, 1964.

Jack Babchick, Houston, for appellant.

Thompson, Coe, Cousins & Irons, Robert W. Porter, Larry L. Gollaher, Dallas, for appellee.

WERLEIN, Justice.

This suit was brought by appellant upon an insurance policy issued by appellee to

recover damages to his building in Texas City caused by Hurricane Carla on or about September 9, 1961. The building was insured in the amount of $27,000.00. At the conclusion of appellant's evidence the trial court, on appellee's motion for an instructed verdict, withdrew the case from the jury, and entered a take nothing judgment against appellant.

In determining whether it was proper for the court to take the case from the jury and render judgment, we must view the evidence in the light most favorable to appellant, the losing party. White v. White, 1943, 141 Tex. 328, 172 S.W.2d 295. We must indulge against the action of the court every inference that may properly be drawn from the evidence, and if the record reflects any testimony of probative force in favor of the losing party, we must hold the court's action improper. Texas Employers Ins. Ass'n. v. Boecker, Tex.Civ. App., 53 S.W.2d 327, error ref.; Clutter v. Wisconsin Texas Oil Company, Tex.Civ. App., 233 S.W. 322, error ref.

The insurance policy in question which was introduced in evidence, as applicable to the present suit, includes damage caused by hurricane. It contains the following provision:

"Subject to Article 6.13 of the Texas Insurance Code, 1951, liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture nor shall it exceed the interest of the insured, or the specific amounts shown under 'Amount of Insurance.'"

It also provides in a subdivision under Section III, entitled "Conditions Applicable Only to Windstorm, Hurricane, and Hail:"

"Unless specifically named hereon, this Company shall not be liable for loss caused by * * * nor (b) by snow storm, tidal wave, high water, or overflow, whether driven by wind or not; nor for any loss caused by rain, whether driven by wind or not, unless the wind or hail shall first make an opening in the walls or roof of the described building, and shall then be liable only for loss to the interior of the building, or the insured property therein, caused immediately by rain entering the building through such openings."

The measure of damages under an insurance contract insuring a dwelling, when the loss is not total, is the difference between the value of the property immediately before and immediately after the occurrence of the loss and damage, within the amount of the policy. German Ins. Co. v. Everett, 1898, 18 Tex.Civ.App. 514, 46 S.W. 95, writ den.; St. Paul Fire & Marine Ins. Co. v. McRae, Tex.Civ.App., 98 S.W.2d 363; Millers Mutual Fire Ins. Co. of Texas v. Eggleston, Tex.Civ.App.1962, 357 S.W.2d 766.

In the present case Earl M. Stafford, a real estate broker for many years who was familiar with the property in question, and who had been in the building and with whom the property had been listed for sale in the summer of 1961, testified that the actual cash price of the property before the hurricane was in the neighborhood of $25,000.00, and immediately after the hurricane its value was $18,000.00. Mr. Stafford's opinion as an expert witness constitutes evidence of probative force as to the value of the property immediately before and immediately after Carla, and shows that the damage to the building was $7,000.-00. The policy, however, provides that the liability of appellee "shall not exceed the actual cash value of the property at the

time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss * * *." Since the building was not totally destroyed, the second clause applies, i. e., the loss shall not exceed the amount it would cost to repair the property with material of like kind and quality. Gulf Insurance Co. v. Carroll, 1959, 330 S.W.2d 227; Manhattan Fire & Marine Insurance Co. v. Melton, 1959, 329 S.W.2d 338, writ ref., n. r. e.

G. G. Martin, a general contractor in construction work with the degree of Construction Engineer, and a well qualified expert, testified that he went out and looked at the building in question with his paint foreman and on another occasion with appellant, and that he checked the building after the hurricane. According to appellant, his inspection with Mr. Martin was eight or nine days after the hurricane. Mr. Martin testified at length with respect to the damage that was done to the roof of the building, the fire wall and flashing, and various rooms and apartments on the second floor. He testified that there were places on the roof that were bare; that quite a bit of flashing at the junction of the roof and fire wall had been blown off or damaged; that some of the gravel on the roof had blown off, and the roof paper was damaged, and rolled up in places; that there was damage to the wallpaper and ceiling; that two windows upstairs had been blown out; that the damage to the ceilings on the second floor was caused by water coming through the roof where it was damaged by the wind; that the temporary work done on the roof cost $173.26, and that repairs to the roof and fire walls would cost $1,752.00, using on the roof the same kind of materials that were previously used. He further testified as to the cost of making other repairs to the upper part of the building and stated that the entire cost of such repairs would amount to $5,115.51; that the water got in the build-

ing from 13 to 13¼ inches, but that all of the damage in his estimate of $5,115.51 was above the water line; that he did not include in his estimate any damage growing out of the rising water, but included only wind damage and damage to the building from rain coming through the damaged roof. Appellant testified that after the hurricane the repairs to the building cost him more than $5,000.00.

■ We have carefully read all the statement of facts, and are of the opinion that there was evidence of probative force that the damage to the roof of the building and the upstairs rooms and Celotex ceiling of the first floor, and indeed all the damage for which recovery was sought, was caused solely by wind or by rain coming through openings in the roof and walls made by the winds of Carla, within the terms of the policy. Gulf Insurance Company v. Carroll, Tex.Civ.App.1959, 330 S.W.2d 227.

The insurance policy in question provides that: "unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring * * * (d) following a change of ownership of the insured property." We are of the view that there was no change of ownership of the insured property within the terms and meaning of the policy prior to the damage thereto caused by Hurricane Carla on or about September 9, 1961. There is some evidence that an earnest money contract had been entered into by appellant with Mr. and Mrs. Gerald H. MacDonald on August 17, 1961, and that $500.00 had been deposited as earnest money. There is also evidence that the earnest money contract recited the purchase price of $32,000.00, including the down-payment and a note which was to be executed by the purchasers in the sum of $29,000.00. Such earnest money contract was not introduced in evidence and it is impossible for this Court to tell whether or not it was an enforceable contract.

Mr. Stafford, who negotiated the sale, when asked whether such earnest money contract was consummated at a later date

by an actual closed transaction, testified that it was not. He further testified that the transaction was not actually closed in August of 1961 or prior to Hurricane Carla. This seems consistent with appellant's expenditure of more than $5,000.00 for repairs subsequent to Carla. The deed of trust securing the purchase money note bears the date of September 5, 1961, above the signatures of the purchasers, Gerald H. MacDonald and wife, Gladys B. MacDonald, but the notarial certificate on the deed of trust shows clearly that the typewritten date of September 5, 1961 appearing in the notarial acknowledgment was struck out and the date of October 31, 1961 was inserted, apparently by the notary public, as the date of acknowledgment. The deed which was executed by appellant and his wife also bears the date of September 5, 1961 above their signatures, but the notarial certificate attached to the deed shows that it was acknowledged before a notary public, other than the one who took the acknowledgment of the purchasers, on November 2, 1961, the notary public having struck out the typewritten date of September 5, 1961 and inserted the date of November 2, 1961.

There is no testimony in the record showing that the deed of trust and deed were delivered prior to their respective dates of acknowledgment. Mr. Stafford testified unequivocally that the date of the sale was November 1, 1961. Appellant testified that he signed the deed before John V. Fox, a notary public, who scratched out the date of September 5, 1961 and dated the acknowledgment at the time appellant signed the deed, and that such date was November 2, 1961. Thus there is evidence of probative force that the deed was not actually executed until November 2, 1961. Since there is no evidence as to the date of delivery of the deed it will be presumed to have been delivered on the date of its execution and acknowledgment. Hooks v. Vanderburg, Tex.Civ.App.1959, 328 S.W.2d 467, and authorities there cited. Moreover, it seems clear that any attempted delivery of a deed prior to its execution would be of no legal effect.

It will be noted that the policy uses the language: "change of ownership." It is a settled principle of insurance law that language of a policy that is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured. Roth v. Travelers' Protective Asso., 102 Tex. 241, 115 S.W. 31; McCaleb v. Continental Casualty Co., 132 Tex. 65, 116 S.W.2d 679; Davis v. National Casualty Co., 142 Tex. 29, 175 S.W.2d 957; 32 Tex.Jur.2d p. 121, § 60. In so construing said provision in the policy, it is our view that what is meant is a complete change of ownership or legal title to the property. Appellee contends that there was a change of ownership when the $500.00 earnest money was deposited. In our opinion the deposit of such earnest money merely gave the MacDonalds an equitable interest in the property. It did not change the complete ownership or legal title to the property from appellant to the MacDonalds. The completed change of ownership occurred when the deed was executed, acknowledged and delivered on November 2, 1961. Furthermore, it was incumbent upon appellee, in order to avoid the policy, to prove a change in the ownership or legal title of the property. Dixie Fire Ins. Co. v. Henson, Tex.Com.App.1926, 285 S.W. 265. It has not done this. There is no evidence that the earnest money contract, which is not in evidence, was valid or could have been enforced by specific performance. There is evidence that such contract was not consummated by an actual closed transaction.

We have not been able to determine from the record upon what grounds the trial court instructed a verdict and entered judgment for appellee. In our opinion the record does not disclose any ground which might sustain such judgment.

Reversed and remanded.