COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, Appellant,

v.

Paul P. COLVERT et ux., Appellees.

No. 16895.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 23, 1968.

Nelson & Sherrod and Charles Oldham, Wichita Falls, for appellant.

Friberg & Parish and J. Walter Friberg, Wichita Falls, for appellees.

## OPINION

MASSEY, Chief Justice.

Suit was by persons insured under windstorm coverage against the insuring company. There was no dispute concerning the fact that a loss had occurred or that an amount was due and payable because thereof. The dispute was upon the amount which was claimed because of the loss.

Judgment was rendered, upon a jury verdict, in favor of Paul P. Colvert, et ux., plaintiffs, and against the Commercial Insurance Company of Newark, New Jersey, defendant, for the amount of $10,114.22 plus legal interest. Defendant insurance company appealed.

Judgment reformed and affirmed.

Neither the insured nor the insurer ever at any time considered measuring the amount of loss to be recompensed under the policy contract by the difference in value of the dwelling before and after the occurrence of the loss and damage. Rather did they treat it as a loss to be measured by the reasonable cost of necessary repairs.

The rule of measure of common law damages is stated in 17 Tex.Jur.2d, p. 148, "Damages", sec. 74, "Partial destruction of or injury to building," viz:

"The proper measure of damages for permanent injuries to a building, short of total destruction, is the difference between the market value before the injury and its market value immediately after the injury. And the measure of damages for a repairable injury to a building is the amount necessary to restore the building to its condition immediately prior to the injury, with interest from the date of injury to the time of the trial. If the building is shown to be old, a question of some difficulty is presented. It may be impracticable to reconstruct it in the same form and dimensions without betterment both in material and in structure. Furthermore, the changed conditions may be such that the cost of repairing the building would be greater than its value. If the evidence leads to the conclusion that the plaintiff, acting as an ordinary man, and without expectation of reimbursement, would have repaired the injury, he should be allowed the cost of repairing; but, if he would not in the circumstances have done so, he should be

allowed only the depreciation in the value of his property."

Of course it is commonly found in insurance policies that the parties thereto have contracted relative to the matter of a measure of damages. For example it is not uncommon to find that the measure prescribed is for repair and/or replacement of damaged parts with reduction applicable by way of depreciation, coupled with the provision that the reasonable and necessary cost thereof shall not exceed the difference in market value of the property before as compared with after the occurrence of loss.

In the instant case, however, the policy of insurance is silent relative to the measure of damages applicable in case of loss, though there is provision that at the option of the insured, upon satisfaction of certain provisions and conditions, the measure of the loss will be based upon "replacement cost" without deduction of depreciation because of any betterment resultant therefrom. Coupled therewith, however, is the proviso that such shall not apply in the case of wall-to-wall carpeting attached to a building or to cloth awnings. The inference is clear that as applied thereto depreciation would be applicable in the event of loss.

From the whole record it is made to appear that the construction placed upon the insurance contract by both the insured and the insurance company, at least prior to the time the company answered plaintiffs' suit, was that the applicable measure of damages was the reasonable cost of necessary repairs and/or replacements to restore the building. See 13 Tex.Jur.2d, p. 300, "Contracts", § 128, "—Construction placed on contract by parties themselves". We believe that it is undisputed that the injury to the building was "repairable".

■ That it was proper that the insured plaintiff bring and prosecute the suit on that theory is in our opinion evident when any doubt thereof is resolved under the principles of contractual construction discussed in 13 Tex.Jur. pp. 269 and 285, "Contracts", § 113, "Construction of agreement as entirety", and § 121, "Strict construction of agreement against party drafting it". There having been no limitation of liability for damages under the loss as by difference in "before and after" market value, and, in any event no evidence offered by the insurance company to show that the claim for damages under the measure submitted exceeded the difference in a "before and after value", the charge given by the court upon the matter of damages sustained by the insured upon loss to the building was proper. The court was correct in refusing to submit specially requested issues relating to market values. Judgment based on the jury's answer was proper. We find evidence to support the verdict and same was not against the greater weight and preponderance of the evidence.

It follows that all points of error related to the loss and damage to plaintiffs' building should be and are overruled.

Special Issue No. 6, and the reply thereto is as follows:

"From a preponderance of the evidence, what do you find to be the reasonable cost of repairs, if any, of the items of damage, as a direct result of hail and windstorm, if any, to the home of the Plaintiffs in Wichita County, Texas, with material of like kind and quality within a reasonable time after said loss, if any, was sustained by the Plaintiffs, Paul C. and wife, Irma B. Colvert?

"Answer: In dollars and cents, if any, or none.

"Answer: $8,167.11".

Special Issue No. 15, and the reply thereto is as follows:

"Do you find from a preponderance of the evidence that the cost of the repairs made by J. L. Hair and Sons included re-

pairing damage or deterioration that existed prior to the hail of May 27, 1965?

"Answer: 'Yes' or 'No'

"Answer: Yes".

Special Issue No. 16, and the reply thereto is as follows:

"What do you find from a preponderance of the evidence was the cost of repairing said pre-existing damage or deterioration, if any, inquired about in the preceding issue?

"Answer: In dollars and cents, if any, or none.

"Answer: $6,380.00."

The repairs to the house were by contractor J. L. Hair and Sons. The contract amount for which repairs were accomplished was $12,500.00.

The judgment rendered in the case was based upon the jury's answer returned to Special Issue No. 6, i. e. that reasonable cost of repair of items damaged by the hail and windstorm was $8,167.11. The insurance company contended there was a mistrial in that the answers returned to Issues Nos. 6 and 16 were in conflict. Under the company's theory it was determinable, through mathematical calculation of subtracting the cost of repair of pre-existing damage or deterioration from the total charge for repairs made by the contractor, that the reasonable cost of repairs necessary as result of the hail and windstorm was only $5,120.00 and that there would be a resulting conflict between the answer returned to Issue No. 16 and to Issue No. 6, in which the jury found the reasonable cost of repairs to be $8,167.11.

It is a matter of common knowledge that in instances of repair done to property in correction of both the recent damage and also older pre-existent damage or obsolescence it is often difficult and sometimes impossible to use the figure representing the reasonable cost of such combined repairs in any determination of what the reasonable cost of necessary repairs to either the recent damage or to pre-existent damage or obsolescence if considered separately. A common example is where damage is done to a portion of an automobile which makes it necessary in the repair process that repair of the damaged portion involves repainting. The cost to repaint the entire automobile would be the same before as after the damage was done and many automobile owners prefer to have the entire automobile repainted, thus saving money on a "complete paint job". This does not mean that there would be any necessary correlation of the amount necessary to repaint the part damaged and necessary to be repainted to the entire painting cost. The cost to repaint the portions of the automobile which had not sustained damage necessitating any painting would not be properly calculable by deducting the cost of painting the portion essential to be repainted by reason of repair of the recent damage. Neither would the cost to repaint the portion which had sustained damage be properly calculable by a converse method. Repainting the entire automobile with a resultant saving to the owner would not mean that there was any unjust enrichment in instances where he was entitled to be made whole as applied to the damage to only a portion of his vehicle, as from a tort-feasor or from his own collision insurer.

■ The same thing would have application in the present instance as applied to the house of the plaintiffs. Special Issues Nos. 15 and 16 are valueless for purposes of arriving at an amount for which judgment should be rendered. It was the jury's answer to Special Issue No. 6 which controlled, and the court did not err in disregarding the jury's answers to the other issues mentioned for purposes of fixing the amount of plaintiffs' judgment, nor in overruling the company's motion for judgment *non obstante veredicto*. In any event the answers to No. 6 and No. 16 are not in conflict. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985 (1949).

The points of error to which the foregoing discussion is germane are overruled.

Special Issue No. 8 and the instruction following it, reads as follows:

"What do you find from a preponderance of the evidence to be the reasonable value of the damages, if any, sustained to the draperies, and carpets in the Plaintiffs' home on or about May 27, 1965, as a direct result of hail and windstorm, if you have found that damage was sustained to them?

"Answer: In dollars and cents, if any, or none.

"Answer: $1600.00

"In arriving at the value of the loss, if any, to the personal property as a direct result of hail and windstorm, if any, you may take into consideration the cost of the property, the reasonable depreciation thereon, the cost of replacing such property and its reasonable cash market value in Wichita County, Texas, at said time and place, just prior to the loss. By 'reasonable cash market value' is meant the price that would be paid by a person who was not compelled to purchase for an article purchased from a seller who was not compelled to sell at a cash price in Wichita County, Texas."

Special Issue No. 17 and the reply thereto read, as follows:

"What do you find from a preponderance of the evidence was the actual cash value of the rugs and the drapes at the time of the loss ascertained with proper deduction for depreciation?

"Answer in dollars and cents, if any, or 'none'.

"Answer: $1,600.00."

The court refused to submit the company's specially requested Special Issue reading as follows:

"What do you find from the preponderance of the evidence was the reasonable cash market value of the rugs, drapes and carpets in question immediately following the hail in question?

"Answer in dollars and cents, if any."

The company has grouped several points, by which it is contended that the trial court erred in overruling the objection that Special Issue No. 8 was global in nature and amounted to a general charge on a portion of the case; in overruling the objection to the instruction submitted in connection with the issue because of failure to include an instruction that the jury would consider the reasonable cash market value of the carpets and drapes after the hail and windstorm; and in refusing the specially requested issue inquiring into the reasonable cash market value of the carpets and drapes immediately thereafter.

It appears that the jury found that a complete and total loss was sustained as applied to the draperies and carpets, since they found not only that $1,600.00 represented their actual cash market value immediately prior to time of the loss, and that the damage done thereto as result of the hail and windstorm was the same figure of $1,600.00. The company contends that there was salvage value, at least, as applied to the rugs and carpets. From evidence in the record it appears that these were retained and stored in the insured's servant quarters building. Presumably they are ready to be delivered to the company upon payment of the judgment in the case as applied to the award of damages to plaintiffs on the basis of the constructive "total loss" found by the jury. As applied to provisions of the insurance policy the items were "replaceable" rather than "repairable". They were replaced by the plaintiffs in the refurbishment of their home. Under these circumstances the plaintiffs were entitled to receive of and from the company the replacement cost, with the company correlatively entitled to the articles themselves or the salvage value thereof. In our opinion, if the company be unwilling to receive the articles themselves upon pay-

ment for the damage to them on the basis of "total loss", it was their burden to establish any salvage value and why such value should be charged against the amount to be paid to the plaintiffs rather than to be delivered to the company.

 As applied to the curtains and draperies the evidence, in our opinion, establishes the fact of a "total loss" thereto without salvage value. It is shown in the evidence that portions of one or two curtains were cut out so that there was some use made on small windows of the plaintiffs' home after the loss, and some curtains and/or draperies given to the plaintiffs' colored servant for such use of them as she might be able to make. We are of the opinion that the record adequately reflects so nominal a value of these articles after the loss and damage thereto was sustained that the judgment should not be overturned or disturbed. To reverse the case because thereof would be for an unsubstantial reason, and judgments are not to be reversed for other than substantial reasons.

In connection with the foregoing it is noticed that a special issue reading as follows has been approved: " 'From a preponderance of the testimony, what pecuniary loss or damage, if any, do you find was caused to the household furniture, wearing apparel and personal property of the plaintiff by reason of the fire * * *?' " Fidelity & Guaranty Fire Corporation v. Ormand, 62 S.W.2d 675 (Austin, Tex.Civ. App.1933, writ dism.). The issue was cited with approval in Crisp v. Security National Insurance Company, 369 S.W.2d 326, 329 (Tex.Sup., 1963).

The points of error are overruled.

During the course of the repairs plaintiffs took lodging at the Marchman Hotel in Wichita Falls. The amount of their hotel bill was not disputed. The coverage of the insurance policy provided for payment to plaintiffs of the reasonable and necessary cost of lodging commencing with the date of loss and extended for the time required, with the exercise of due diligence and dispatch, to repair or replace such damaged or destroyed property.

In answer to the special issue purporting to resolve the amount to which the plaintiffs were entitled to be reimbursed because of hotel expenses for lodging the jury found the amount of $380.00. From the record it is observed that there is no evidence which supports the finding because of absence of proof of the time for which substitute lodging was necessary. Furthermore, the issue as submitted was one upon answer to which no proper judgment could be founded as a part of the whole liability collectible by plaintiffs of the insurance company under its contract. Accordingly, the amount of the judgment rendered in the case was excessive by the amount of $380.00.

Judgment is reformed by reducing the award thereby made to plaintiffs by the amount of $380.00. As so reformed the judgment is affirmed.