IMPERIAL INSURANCE COMPANY,
Appellant,

v.

NATIONAL HOMES ACCEPTANCE
CORPORATION, et al., Appellees.

No. 1498.

Court of Appeals of Texas,
Tyler.

Dec. 10, 1981.

Rehearing Denied Jan. 7, 1982.

Aaron S. Kaufman, Herbert Garon, Jr., Dallas, for appellant.

George Garrison Potts, Beverly Brown, Dallas, for appellees.

McKAY, Justice.

This appeal is from a judgment on the verdict rendered in favor of appellees National Homes Acceptance Corporation (National), Federal National Mortgage Association (Federal), and The Lomas & Nettleton Company (Lomas & Nettleton)[1] who sued appellant Imperial Insurance Company (Imperial)[2] to recover $9,930.00 actual damages for fire loss on a Texas Standard Fire Insurance Policy written by Imperial and $9,800.00 punitive damages for Imperial's refusal to pay the claim. Imperial generally denied liability and affirmatively pleaded increased hazard and vacancy. Imperial also pleaded it was due an offset against appellee's recovery, if any, for the value of the property after the fire.

---

[1.] During the pendency of this suit, National was merged into Lomas & Nettleton whereupon it intervened as a party plaintiff.

[2.] National and Federal also sued Great Southwest Fire Insurance Company. It was dismissed with prejudice, however, before the trial commenced.

Trial was to a jury. The jury found that the reasonable cost to repair the damaged property with materials of like kind and quality within a reasonable time after the fire was $9,930.43; that Imperial acted with heedless and reckless disregard for the rights of appellees in refusing to pay their claim within a reasonable time; that no punitive damages should be assessed against Imperial for this conduct; that the damaged property was not vacant at least thirty (30) consecutive days before the fire; and, that there was not an increase in hazard from February 7, 1977 until the date of the fire. Based upon this verdict, the court entered judgment that plaintiffs and intervenor recover $9,930.43 from defendant Imperial. We affirm.

National services mortgages for Federal. Prior to December 7, 1976, Federal held a Deed of Trust lien on residential property in Ft. Worth owned by Virgie M. Jackson (Jackson). On that date, Federal foreclosed on Jackson's property and acquired title.

Imperial had issued, on January 15, 1974, a fire insurance policy in the amount of $9,500.00 on Jackson's residence with the loss payable to Federal. This policy was effective from February 7, 1974 until February 7, 1977. After Jackson's mortgage was foreclosed, Federal notified Imperial to change the insured from Jackson to Federal. On January 21, 1977, Imperial issued a general change of endorsement to this effect.

Thereafter, Imperial issued a renewal policy in the amount of $11,000.00 on this property, effective February 7, 1977. This renewal, however, erroneously named Jackson, not Federal, as the insured.

The property burned on February 8, 1977, but was not a total loss. On March 14, 1977, Imperial notified Federal that it was cancelling the renewal policy. Subsequently, on June 30, 1977, Imperial acknowledged receipt of Federal's proof of loss, but denied that it had provided coverage and refused to pay the claim.

Appellant's first two points complain that the court erred in refusing to grant its motion for judgment notwithstanding the verdict because no evidence was presented of the market value of the property immediately before and immediately after the fire. We overrule these points.

The policy sued upon provides:

Loss on building items shall be payable to Federal National Mortgage Association, c/o National Homes Acceptance Corp., Lafayette, Indiana as Mortgagee or Trustee, as their interest may appear at time of loss.... Subject to Article 6.13 of Texas Insurance Code—1951, liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction...; nor shall it exceed the interest of the insured, or the specific amounts shown under "Amount of Insurance."

Elwood Knox (Knox), an appraiser for the General Adjustment Bureau and the only damage expert to testify, testified that he appraised the property and prepared an estimate of the amount necessary to repair it to a "livable condition regardless of the condition it was in before the fire." He stated that he considered only the damages resulting from the fire and that the cost of repairing this damage with materials of like kind and quality was $9,930.47 at the time of appraisal. Knox offered no testimony on the market value of the property immediately before and immediately after the fire.

The policy provision quoted above is a limitation upon the insurer's liability, *Manhattan Fire and Marine Ins. Co. v. Melton*, 329 S.W.2d 338, 341 (Tex.Civ.App.—Texarkana 1959, writ ref'd n.r.e.) not a substantive measure of damages. Annot., 61 A.L.R.2d 711, 714 (1958). The ordinary measure of damages for a partial loss under an insurance contract insuring a dwelling is the difference between the value of the property immediately before and immediately after the loss, but within the amount

of the policy. *Lerman v. Implement Dealers Mutual Ins. Co.*, 382 S.W.2d 285, 287 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.).

In cases where the policy contains the above cited provision, however, courts have allowed recovery based upon the cost to repair or replace. *Commercial Ins. Co. of Newark, New Jersey v. Colvert*, 425 S.W.2d 34, 35 (Tex.Civ.App.—Fort Worth 1968, no writ); *Farmers Mutual Protective Ass'n of Texas v. Cmerek*, 404 S.W.2d 599, 600 (Tex. Civ.App.—Austin 1966, no writ); *Lerman v. Implement Dealers Mutual Ins. Co., supra* at 288; *Gulf Ins. Co. v. Carroll*, 330 S.W.2d 227, 233 (Tex.Civ.App.—Waco 1959, no writ). One court has based this result upon the facts that the parties apparently construed the appropriate measure of damages as the cost to repair or replace, and neither party pleaded nor proved an alternative value as a measure of damages or as a limitation on the insurer's liability. *Manhattan Fire and Marine Ins. Co. v. Melton, supra* at 341.

■ In the case at bar, plaintiffs pleaded and proved as damages only the cost to repair. At trial, neither party put on proof of the market value of the dwelling before and after the fire, and Imperial did not object to Knox's testimony concerning the cost to repair on the grounds that it was an improper measure of recovery. Imperial did not raise the issue of the propriety of the measure of damages until it moved for an instructed verdict. Although we do not feel the parties here construed the cost to repair as the appropriate measure of damages, we hold that in light of the policy provisions and the cases which allow recovery based upon the cost to repair or replace, it was not error for the court to allow plaintiffs to recover the cost to repair the dwelling. The case of *Millers v. Eggleston*, 357 S.W.2d 766, 767 (Tex.Civ.App.—Fort Worth 1962, no writ), cited by appellant, is distinguishable. The insurance policy in that case apparently designated the common law measure of damages, or the market value immediately before and immediately after the loss, as the measure of damages under the policy.

■ Appellant's third point of error is that the $9,930.43 awarded to appellees does not account for the market value of the property after the loss, and therefore allows appellees a double recovery. Its argument is that appellees may recover the proceeds from selling the property and that an instruction by the court to the jury to find the market value of the property after the loss would have prevented a double recovery. We overrule this point.

Appellant pleaded its entitlement to an offset or credit for the value of the property after the fire. However, it offered no evidence on this value and requested no jury instruction. This objection is therefore waived. Rule 279, Tex.R.Civ.P.

■ In its fourth point, appellant argues that special issue number one was erroneous because it does not relate the damages sought to the condition of the premises before the fire. We disagree. Special issue number one was submitted and answered as follows:

SPECIAL ISSUE NO. 1

From a preponderance of the evidence what do you find to be the reasonable cost of repairs, if any, of the damage sustained to the premises at 4301 Hardeman as a direct result of fire, if any, with materials of like kind and quality within a reasonable time after said loss, if any, was sustained. Answer in dollars and cents if any or none.

ANSWER: $9,930.43

This special issue comports with the limitation in the policy and we feel that it fairly submitted a controlling issue. *Commercial Ins. Co. of Newark, New Jersey v. Colvert, supra* at 36; *Implement Dealers Mutual Ins. Co. v. Cox*, 376 S.W.2d 384, 387 (Tex.Civ.App.—Houston 1964, no writ); *Gulf Ins. Co. v. Carroll, supra* at 233.

In its fifth point of error, appellant argues that it was error to submit special issues numbers two and three concerning punitive damages sought to be assessed against it. We overrule this point. The jury found that defendant acted with heed-

less and reckless disregard for the rights of plaintiffs by refusing to pay plaintiffs' claim within a reasonable time. It found, however, that no punitive damages should be assessed against defendant.

■ Rule 434 of the Texas Rules of Civil Procedure provides for reversal of the trial court only when it appears that an error "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case...." We do not agree with appellant that merely submitting the issues on punitive damages caused the rendition of an improper judgment in this case, in light of the fact that no punitive damages were assessed against appellant.

■ Appellant's sixth point is that the court erred in admitting plaintiffs' exhibit number 15, a repair estimate prepared by Knox, because it was hearsay and a summary whose underlying records were not made available to the opposing party. We overrule appellant's sixth point.

Knox, the damage appraiser, who testified at trial and was rigorously cross-examined by Imperial's counsel, prepared the repair estimate in question from field notes he had taken when he inspected the property. It was readily admitted by appellees that these field notes were destroyed as a result of office procedures two years after Knox's inspection. However, during the two years the field notes were in existence, Knox's repair estimate was submitted three times to Imperial.

The hearsay rule applies when "a document is offered in evidence which contains a written assertion by some one not a witness...." 1A Ray, *Texas Practice* § 790 (1980). Since Knox was a witness, the hearsay rule is inapplicable.

The Supreme Court of Texas, in discussing records which underlie summaries offered into evidence, has stated, "it is for the trial court in the exercise of its discretion to determine whether the opposing party had an adequate opportunity to examine the records." *Black Lake Pipe Line Co. v. Union Const. Co.*, 538 S.W.2d 80, 93 (Tex.1976).

The trial judge apparently concluded that appellant had ample opportunity to examine the records underlying the summary and we find no error in the admission of the repair estimate.

■ In appellant's seventh point of error, it asserts there was insufficient evidence to support the jury finding of $9,930.43 as the cost to repair. We have reviewed the entire record, including Knox's testimony, and conclude that sufficient evidence was presented upon which the jury could find this amount as the reasonable cost of repair. Appellant's seventh point is therefore overruled.

Appellant's eighth and ninth points of error are argued together. In appellant's eighth point, it maintains the court should have granted its motion for judgment notwithstanding the verdict because its defense of increased hazard from the date of the original policy was established as a matter of law. Appellant's ninth point of error is that the court erred in refusing submission of a special issue on the increase in hazard from the date of the original policy. We overrule these points.

The evidence offered to prove increase in hazard is that water utilities were discontinued on November 30, 1976; that electric utilities were discontinued on December 22, 1976; that Jackson no longer occupied the premises, and that J. B. Wilson, a "squatter", was living there; and, that the house needed painting and screens.

■ An increase in hazard is shown by demonstrating a change in the purpose for which the building is used or in the condition of the premises. 32 Tex.Jur.2d *Insurance* § 281 (1962); Annot., 19 A.L.R.3d 1336, 1340 (1968). All authority directs that only a substantial or material increase in hazard results in a forfeiture of the policy. *National Union Fire Ins. Co. v. Richards*, 290 S.W. 912, 916 (Tex.Civ.App.—Waco 1927, no writ); 32 Tex.Jur.2d *Insurance* § 281 (1962); Annot., 19 A.L.R.3d 1336, 1340 (1968). We do not believe the changes in the condition of the property proved increased hazard as a matter of law.

The original policy went into effect on February 7, 1974, provided coverage for three (3) years, and insured the property to $9,500.00. The renewal policy was effective on February 7, 1977 and insured the property for one (1) year in the amount of $11,-000.00. The trial court submitted a special issue inquiring whether there was an increase in hazard between February 7, 1977, the date of the renewal policy, and February 8, 1977, the date of the fire. The jury answered there was no increase in hazard.

In *Hartford Fire Ins. Co. v. Dorroh*, 133 S.W. 465, 467 (Tex.Civ.App.—1911, writ dism'd), the court stated, "It is also the established rule that whether there has been an increase in the hazard or not must be determined by a comparison with the conditions existing at the time the policy was written." We found no Texas cases discussing whether this language refers to an original policy or a renewal policy.

Appellant's position is that any increase in hazard must be measured from the date of the original policy because an insurer has the right to assume, when issuing a renewal policy, that the risk of the loss under both policies is the same. Appellant cites *National Liberty Ins. Co. v. Kelly*, 232 S.W. 895 (Tex.Civ.App.—Texarkana 1921, no writ) as support but we believe it is inapplicable to the fact situation at bar. As we read that decision, it is limited to the increased hazard which may occur when personal property is moved from one location to another. *National Liberty Ins. Co. v. Kelly, supra* at 896. In any event, in light of the changes in the terms of the policies, we do not believe that Imperial had the right to assume that the risk of loss on the renewal policy was identical to that on the original policy. It therefore was not entitled to submit a special issue on the increase in hazard from the date of the original policy.

Judgment of the trial court is affirmed.