MARYLAND MOTOR CAR INS. CO. v. SMITH. (No. 2793.)

(Court of Civil Appeals of Texas. Texarkana. July 12, 1923. Rehearing Denied Oct. 4, 1923.)

1. Appeal and error ⬅➡1062(2)—Refusal to submit issue as to value of car after fire held not error.

In an action on an automobile fire policy, refusal of the court to submit the issue as to the reasonable value of the automobile in question after the fire, so as to permit a determination of the difference between the cash value just before and after the fire, *held* not reversible error.

2. Insurance ⬅➡502—Clause as to replacing destroyed parts of automobile construed; "like, kind and quality."

In automobile fire insurance policy providing that, in case of partial loss, the company's liability should not exceed the cost to repair or replace the automobile or such parts thereof as may be damaged with other of like kind and quality, the words "like kind and quality" *held* not to refer to parts of like age, use, and condition, or present cash value of the parts injured or destroyed by the fire, but to be used as relating to quality and suitableness or fitness for the purpose intended; that is, if parts of like age, use, and condition of the injured or destroyed parts were practically unobtainable, so that it was practicable to use only new parts, and new parts would have to be used, the policy would not forbid it.

3. Appeal and error ⬅➡1058(2)—Exclusion of testimony tending to discredit witness held not reversible error.

In an action on an automobile fire policy, refusal to permit defendant to show by cross-examination of one of plaintiff's witnesses that such witness had been criminally intimate with plaintiff, and had been caught occupying a room with her, *held* not reversible error, where the witness was permitted to testify "that he was a special friend to and on intimate terms with Mrs. S."

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by Mrs. Ora B. Smith against the Maryland Motor Car Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The appellant issued to appellee a policy of insurance on an automobile against direct loss or damage by fire "to an amount not exceeding the amount of insurance herein specified," which was $1,800. The policy of insurance contained, among other provisions, the following clause:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated accordingly with proper deduction for depreciation, however caused (and without compensation for the loss of use of the property), and shall in no event exceed what it would then cost to repair or replace the automobile or such parts thereof as may be damaged with other of like kind and quality; such ascertainment or estimate shall be made by the assured and this company, or, if they differ, then by appraisal as hereinafter provided."

The appellee brought suit on the policy, claiming that the insured automobile, while being driven on a public highway, was so burned and charred by fire that it cannot be restored nor any of its parts utilized, and that the car is without any pecuniary or market value. The suit is to recover $1,800 as the market value of the car at the time of its alleged destruction. The defendant answered, denying that the cash value of the car at the time of the fire was $1,800, and that it was practically destroyed by the fire, and further specially pleaded that under the special clause of the policy set out it could not be held liable for the partial loss in excess of what it would cost to repair the automobile or make replacement of the damaged parts such as their condition was on the date of the fire, which was not in excess of $625, and above which sum it could not be held liable.

The court submitted to the jury the two special issues, viz:

"Question 1. What amount of money would reasonably be required to repair the car in question and replace such parts thereof, if any, as have been damaged, with others of like kind and quality, so as to place it in substantially as good condition as it was before the fire?

"Question 2. What was the actual cash value of the car in question immediately before the said fire?"

The jury answered question 1, "$1,425," and question 2, "$1,500." It was agreed as a fact that the sum of $52.50 was the reasonable expense of caring for and protecting the automobile after it was burned. The court entered judgment against defendant on the finding of the jury on question 1 in the sum of $1,425 plus the agreed sum of $52.50 as the cost of caring for and protecting the car after it was burned.

According to the evidence the automobile was purchased by the plaintiff about June 1, 1921, from Mr. Gaines for $2,250, giving

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

as part payment therefor an old automobile valued at $750. The automobile had been used by the plaintiff about 11 months at the time the insurance policy was issued on June 13, 1921. At the time of the fire a new car of the same kind would have cost at the factory, $1,695, and with freight and war tax added would have cost in Tyler $1,900. On the morning of May 22, 1922, the plaintiff's husband was driving the automobile on a public highway, and it was burned and damaged by fire which originated from an explosion of gasoline. According to several witnesses, all the parts of the automobile were so charred as to be practically a total loss, except the following, which were not damaged, viz.: The wheels, axles, fenders, and the parts up to and including the chassis. A witness testified that the remaining uninjured parts of the automobile were worth "$200 or $250," and another witness testified that it was worth "$300 or $350," but also said that he did not know about the value beyond a mere "guess" at it. The witness W. P. Smith testified:

"I have examined the car very carefully twice since it was burned, and I believe it will be impossible to repair it; it is a total wreck. Parts of the car are burned off—the top, the seats, and all of the upholstering. The ignition, the pipes, and everything of that sort are burned off; the vacuum tank and all those pipes are burned all to pieces; there is nothing there, only the transmission, the wheels, and the frame, which latter is warped; all of the top and the tubes over the ignition are burned and warped."

The testimony of the several witnesses differs as to the amount of money it would cost to repair or replace the material and parts destroyed with material and parts of like kind and quality. The witnesses examined the parts of the automobile remaining after the fire. One witness testified that the automobile as it stood after the fire could be repaired, and estimated the cost of "repairing" the damage sustained at $644.50. The other witnesses concluded that all the parts were not injured, but that the several damaged parts were so injured by the fire as to make it impracticable to "repair" them with ordinary repair work and material, and that it was necessary to entirely "replace" the several damaged parts with other parts of like kind and quality, and that only new parts of like kind and quality could be purchased, which was estimated to cost, with the required labor to put them in, in amounts varying from $1,500 to $2,000. In other words, these several witnesses testified, in effect, that the "engine" and the "body" and some special parts of "the equipment" were each a total loss for practicable purposes, and would have to be "replaced" with new parts of the same sort.

As the court entered judgment on the jury finding as to cost of replacing the injured parts, it must be assumed, as we do, that the court concluded as a fact that the automobile as a whole was not totally destroyed for practicable purposes by the fire.

Simpson, Lasseter & Simpson, of Tyler, for appellant.

Johnson, Edwards & Hughes, of Tyler, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellant predicates error on the refusal of the court to submit the following requested question:

"What was the reasonable value of the automobile in question after the fire?"

The point made is that the only damages covered by the policy for a partial loss, as this case is, is the difference between the actual cash value of the automobile just before the fire and the actual cash value of the sound parts remaining after the fire. It is concluded that it was not a positive reversible error to refuse to put the question in that particular form to the jury, to answer, because the question submitted, as applied to the real issue in this case, was within the meaning of the terms and conditions of the policy in suit.

[2] The appellant insists that the verdict of $1,425 is excessive in that the actual cash value of the automobile is declared to be $1,500, while the remaining sound parts, as shown by the evidence, are worth between $250 and $300. There is evidence, relied on by the appellant, going to show that the remaining sound parts are worth the sum mentioned. There is also evidence going to show that the remaining sound parts could be readily used again repairing the automobile; that the cost of replacing the parts of the car which were damaged was in amounts varying from $250 to $2,000. The finding of the jury in the sum of $1,425 evidently involves the finding by them that the loss sustained to the automobile parts separately was to such an extent as to practically require the injured parts to be entirely replaced with other parts. There is evidence to support such finding, and to the amount stated by the jury. It does appear that the verdict is in a large sum in view of the value of the car. But, in view of the stipulation in the policy, the evidence showing the cost of replacing the injured parts is too strong and abundant to warrant this court in setting aside or reducing the sum of the verdict. The parties have themselves agreed upon the measure of liability, the extent of it being distinctly provided by a stipulation in the policy binding upon both parties. It is provided in the stipulation that—

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained accordingly with prop-

er deduction for depreciation, however caused, and without compensation for loss of use of the property."

Thus far, and if nothing more were contained in the policy, it is apparent that, if there were a total destruction of "the property," referring to "the automobile," the insurance company would be liable for its actual cash value at the time the loss by fire occurred, not exceeding the maximum sum stated in the policy of $1,800. But the stipulation goes further, and also provides that the extent of the liability of the insurance company "shall in no event exceed what it would then cost to repair or replace the automobile or such parts thereof as may be damaged with other of like kind and quality." This latter has application exclusively to a loss or damage only partial and less than a total loss, and was intended to provide a method of measuring the extent of the amount of the liability of the insurance company for such damage or loss, less than a total loss of the automobile itself, as was sustained. It means that, if the automobile, or any of its specially enumerated parts separately, sustained a "damage," slight or great, requiring only ordinary repairs to be made on it to restore it to the condition it was in just before the fire, the "then cost to repair" was to measure and fix the extent of the amount of liability. But, if any of the specially enumerated parts of the automobile suffered a damage or injury to such an extent as to practically require that they be replaced with other parts, the "then cost to replace such parts thereof as may be damaged with like kind and quality" was intended to measure and fix the extent of the amount of liability. The policy insured against loss of or injury by fire to the automobile or "the body, engine and equipment of said described automobile." In the stipulation the limitation placed upon the extent of the cost of the "repairs" where only ordinary "repair" by work or materials, or both, are reasonably required to restore the car, or parts injured, is the sum of the "then cost to repair," meaning, of course, the fair and reasonable cost of such repairs at the date of injury. Also the limitation in the stipulation placed upon the cost to "replace" the injured or destroyed parts, if injured to the extent that it practically requires the parts to be "replaced" with other parts, is the sum of the "then cost to replace such parts as may be damaged with other of like kind and quality." The words "of like kind and quality" do not refer to parts of like age, use, and condition, or present cash value of the parts injured or destroyed by the fire. The words are used as relating to quality and suitableness or fitness for the purposes used. It may be that parts of like age, use, and condition of the injured or destroyed parts are practically obtainable, and it may be that they are not practically obtainable. If practicable to use only new parts, and new parts would have to be used, the words and meaning of the stipulation would not forbid it. Consequently the reasonable cost either to "repair" or to "replace" the injury or partial loss with materials of like kind and quality, as fixed by the judgment of a jury, would be accepted as decisive, because the insurer's liability is fixed on that agreed basis. The only question is that of whether or not there is evidence to support the finding of the jury, and whether or not such finding exceeds the insured amount of the automobile.

[3] Error is predicated upon the ruling of the court in refusing, on objection made, to permit appellant to show, on cross-examination, by a witness testifying in behalf of appellee, that he was criminally intimate with appellee, and that he and appellee within two months before this trial were caught occupying a room together at night in one of the boarding houses, and that as a consequence of the circumstances the appellee was charged by complaint with vagrancy, and pleaded guilty to the charge. The witness was testifying to the cost of repairing the car, and had testified that the cost would be at least $2,000, and more than the cost of a new car. The rejected testimony was offered for the purpose of showing a bias of the witness in favor of the appellee. In view of the record it is believed that the error complained of, if an error, should not operate to reverse the judgment. The witness was permitted to and did testify in answer to questions of appellant's attorney "that he was a special friend to and on intimate terms with the plaintiff, Mrs. Ora B. Smith." And, irrespective of the witness' testimony, there is evidence that the cost of repairing the car would be "$1,500" and "$1,800." The jury's finding was in a sum less than "$1,500," showing that the evidence of this witness was not relied on entirely, if considered by the jury, in deciding the issue of "cost of repairs." It is thought there was not such improper proceeding on the part of the attorney as to amount to misconduct requiring or justifying a reversal. The court promptly admonished the jury not to consider and to disregard the remarks.

The judgment is ordered affirmed.