TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00118-CV






Great Texas County Mutual Insurance Co., Appellant



v.



Emmett C. Lewis, Appellee







FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT


NO. 24,602, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING







 Great Texas County Mutual Insurance Co. ("the Company") appeals from a trial
court judgment that awards Emmett Lewis, the Company's insured, a money judgment in his suit
to recover on his automobile-insurance policy. We will affirm the trial court judgment. (1)


THE CONTROVERSY


 The facts are undisputed. While covered by a policy issued by the Company,
Lewis's 1989 Dodge Caravan motor car sustained damage to the engine. The automobile had been
driven 110,000 miles at the time. The Company inspected the automobile and calculated the cost
of repairing the damage to be $3,608.27, which included the cost of a re-manufactured engine,
replacement parts, and labor. From the $3,608.27, the Company subtracted the policy deductible
of $527.00 and $2,031.72 for betterment or depreciation, leaving a net sum of $1,049.55. The
Company offered Lewis that sum to discharge the Company's obligation under the property-damage section of the policy.

 Alleging his coverage did not authorize the $2,031.72 deduction for betterment or
depreciation, Lewis sued the Company on his policy to recover the $3,608.27 estimated cost, less
the policy deductible of $527.00, together with other sums not in dispute. The trial court
concluded the policy did not authorize a deduction for betterment or depreciation and rendered
judgment accordingly.

 In the Company's appeal, the sole issue is one of law: whether the language of the
policy authorized the deduction of $2,031.72 claimed by the Company for betterment or
depreciation.


DISCUSSION AND HOLDINGS


 Concerning damage to a covered automobile, the policy provided as follows under
the heading "Limit of Liability":


Our Limit of Liability for loss will be the lesser of the:


1. Actual cash value of the . . . damaged property;


2. Amount necessary to repair or replace the property with other of like kind and
quality; or


3. Amount stated in the Declarations of this policy.



 In its first point of error, the Company complains "[t]he trial court erred in
concluding as a matter of law that the phrase 'like kind and quality' does not allow an insurer to
deduct for betterment or depreciation." We disagree.

 "In arriving at the correct measure of damages in an action to recover under an
automobile collision policy, it must be kept in mind that the action is not a suit for damages but
one on the contract of insurance, and that therefore . . . the language of the contract sued upon
must prevail . . . ." L.S. Tellier, Annotation, Measure of Recovery by Insured Under Automobile
Collision Insurance Policy, 43 A.L.R.2d 327, 329 (1955) (emphasis added).

 The contract provision quoted above gave the Company an election. The Company
might pay Lewis (1) the actual cash value of the damaged property or (2) the amount necessary
to repair or replace the property with another of like kind and quality. After inspecting the engine,
the Company elected to pay the "[a]mount necessary to repair or replace the property with other
of like kind and quality." The parties agree that the engine required repairs totaling $3,608.27
and that the Dodge Caravan had been driven 110,000 miles when the engine--original to the
car--was damaged.

 The words betterment and depreciation are not found in the policy. The Company
argues, however, that they are necessarily implied because the replacement engine costing
$3,608.27 is tantamount to a new engine--it will carry a warranty even though it is re-manufactured. Thus, the rebuilt engine will have an expected useful life much longer than Lewis's
used engine that had been driven 110,000 miles when it was damaged. Calculating that the
110,000 miles were equivalent to three-quarters of the useful life of the damaged engine, (2) the
Company argues that Lewis will receive an equivalent windfall unless the Company is allowed its
claimed entitlement to a deduction for betterment or depreciation. We should say, however, that
the Company's interpretation must be one sanctioned by the language of the policy. We believe
that is not the case.

 It is generally accepted that depreciation is a factor to be considered when an
insurer elects to pay the "actual cash value" of the damaged property, which the Company
declined to do here. See Wendy Evans Lehmann, Annotation, Depreciation as Factor in
Determining Actual Cash Value for Partial Loss Under Insurance Policy, 8 A.L.R.4th 533, 539
(1981). (3) By electing to pay Lewis the "amount necessary to repair or replace" the engine with
another "of like kind and quality," we believe the Company elected a measure of loss that does
not allow for depreciation.

 The words "repair" and "replace" mean restoration to a condition substantially the
same as that existing before the damage was sustained. See Northwestern Nat'l Ins. Co. v. Cope,
448 S.W.2d 717, 719 (Tex. Civ. App.--Corpus Christi 1969, no writ); Appleman, Insurance Law
and Practice § 4004, at 710 (6th ed. 1972). Because Lewis's automobile was a functioning or
operating automobile before the damage, the Company was required to pay an amount necessary for
a repaired or replacement automobile of that character. The qualifying words "of like kind and
quality" permit but do not require an engine of similar age, use, condition, or present cash value;
they refer simply to repairing the damaged automobile so that it is suitable or fit for its intended
purpose. See Rhodes, Couch on Insurance § 54:148, at 536-37 (2d. rev. ed. 1983); Appleman,
supra, § 4005 at 724 ("If the insurer elects to repair, such repairs must make the car as serviceable
as it was before the loss.").

 When an insurer elects to repair, the insured is entitled to the amount required to
repair the automobile. Agricultural Workers Mut. Auto Ins. Co. v. Dawson, 424 S.W.2d 643, 645
(Tex. Civ. App.--Tyler 1968, no writ). The insurer's obligation in such a case is not discharged
until the insurer pays the cost of repair less any deductible specified in the policy. Appleman,
supra, § 4005 at 726. The only evidence in the record regarding the cost of repairing Lewis's
automobile is the agreed sum of $3,608.27; the specified deductible is $527.00. (4)

 If the Company may discharge its obligation by paying Lewis $1,049.55, he will
not have, under the evidence, a sum sufficient to restore his engine and automobile to a
functioning or operating state. He will be deprived of the protection ostensibly purchased in his
policy--protection against the risk of having to pay out of his own pocket to restore his motor car
and its component parts to a functioning or operating state in the event they were damaged. (5) See
Farmers Mut. Protective Ass'n of Tex. v. Cmerek, 404 S.W.2d 599, 600-01 (Tex. Civ. App.
--Austin 1966, no writ) ("The insurer is not entitled to a deduction for depreciation in the event of
a partial loss, as distinguished from a total loss."); see also Implement Dealers Mut. Ins. Co. v. Cox,
376 S.W.2d 384, 387 (Tex. Civ. App.--Houston [1st] 1964, no writ) (when partially damaged
property covered by an insurance contract can be repaired with new material of like kind and quality,
no deduction for depreciation is required); Gulf Ins. Co. v. Carroll, 330 S.W.2d 227, 233 (Tex.
Civ. App.--Waco 1959, no writ).

 The decisions cited by the Company for the opposite proposition are not persuasive. 
In Whitson v. Western Agric. Ins. Co., 1995 Ariz. App. LEXIS 66, 186 Ariz. Adv. Rep. 10 (Ariz.
App. March 14, 1995, no pet.), the court interpreted "like kind or quality" to mean that damaged
parts should be replaced with parts of similar age, condition, or cash value. On this basis, the
court suggested that the insured would not be entitled to new replacement parts without a
deduction for the vehicle's depreciation. Because "like kind or quality" refers to parts fit for their
intended purpose rather than parts similar in age, condition, or value to the parts damaged, the
Company's reliance on this decision is misplaced. See Maryland Motor Car Ins. Co. v. Smith,
254 S.W. 526, 528 (Tex. Civ. App.--Texarkana 1923, no writ).

 The Company also relies upon General Accident Fire & Life Assurance Corp. v.
Judd, 400 S.W.2d 685 (Ky. 1966). This decision is inapplicable because no evidence was
introduced that the insured's car could be put in substantially as good physical condition as it was
before the accident.

 Finally, Tomes v. Nationwide Insurance Co., 825 S.W.2d 284 (Ky. Ct. App. 1991)
involved a dispute over whether an insurance company could employ used parts in repairing an
eight-year-old car. The court held it was "not reasonable to expect the insurer to pay for new
parts when less expensive materials can be obtained to restore the car to its former condition." 
Tomes, 825 S.W.2d at 286 (emphasis added).

 We do not disagree with the Tomes court's conclusion; we fail to see, however,
how it supports the Company's position. Neither the Company nor Lewis have disputed whether
it was proper for the Company to base its payment to Lewis on the value of a re-manufactured or
new engine rather than a used engine. Moreover, in concluding that the insurer was not obligated
to pay for new parts, the court based its decision on evidence that less expensive materials
sufficient to restore the car to its former condition were available. Tomes, 825 S.W.2d at 285. 
In the present case, no evidence was introduced to suggest that Lewis could make the necessary
repairs to his automobile for $1,049.55.

 By reducing its payment to Lewis by "betterment" or "depreciation," the Company
failed to provide Lewis with an amount of money sufficient to make his vehicle as serviceable as
it was before the loss.

 We overrule point of error one.

 In its second point of error, the Company argues that the evidence was legally
insufficient to support the trial court's finding that it violated article 21.21 of the Texas Insurance
Code. Since the trial court did not award Lewis treble damages for the Company's violation, the
finding is moot. We overrule point of error two.

 We affirm the trial court judgment.



 

 John Powers, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: November 5, 1998

Publish

1. After a trial without a jury, the court rendered judgment against the Company in the
principal sum of $3,608.27, less a policy deductible of $527.00, or $3,081.27, together with
$840.00 for storage costs, $2,968.00 for loss of use of the automobile, $2,700.00 in attorney's
fees, and costs of court.
2. The Company introduced evidence that the expected useful life of a re-manufactured engine
is 100,000-150,000 miles. An insurance adjuster testified that a 75% "betterment" figure was an
industry average for an engine driven over 100,000 miles.
3. The Annotation declares that it is a matter of "true controversy" whether the "cash value"
recoverable for a partial destruction of insured property may be reduced by depreciation when an
insurer elects to repair or replace a damaged part. Lehmann, 8 A.L.R.4th at 539 n.28, 550.
4. The evidence adduced at trial focused on the cost of a re-manufactured engine and the issue
of "betterment" or "depreciation." Nothing in the evidence pertains to the issue of whether Lewis
could acquire and install an operating engine, whether used or of lesser quality, for $1,049.55.
5. See Appleman, § 3883, at 65, 66 (Supp. 1997) (criticizing two out-of-state courts for
allowing deductions for depreciation under insurance policies).


ge, condition, or value to the parts damaged, the
Company's reliance on this decision is misplaced. See Maryland Motor Car Ins. Co. v. Smith,
254 S.W. 526, 528 (Tex. Civ. App.--Texarkana 1923, no writ).

 The Company also relies upon General Accident Fire & Life Assurance Corp. v.
Judd, 400 S.W.2d 685 (Ky. 1966). This decision is inapplicable because no evidence was
introduced that the insured's car could be put in substantially as good physical condition as it was
before the accident.

 Finally, Tomes v. Nationwide Insurance Co., 825 S.W.2d 284 (Ky. Ct. App. 1991)
involved a dispute over whether an insurance company could employ used parts in repairing an
eight-year-old car. The court held it was "not reasonable to expect the insurer to pay for new
parts when less expensive materials can be obtained to restore the car to its former condition." 
Tomes, 825 S.W.2d at 286 (emphasis added).

 We do not disagree with the Tomes court's conclusion; we fail to see, however,
how it supports the Company's position. Neither the Company nor Lewis have disputed whether
it was proper for the Company to base its payment to Lewis on the value of a re-manufactured or
new engine rather than a used engine. Moreover, in concluding that the insurer was not obligated
to pay for new parts, the court based its decision on evidence that less expensive materials
sufficient to restore the car to its former condition were available. Tomes, 825 S.W.2d at 285. 
In the present case, no evidence was introduced to suggest that Lewis could make the necessary
repairs to his automobile for $1,049.55.

 By reducing its payment to Lewis by "betterment" or "depreciation," the Company
failed to provide Lewis with an amount of money sufficient to make his vehicle as serviceable as
it was before the loss.

 We overrule point of error one.

 In its second point of error, the Company argues that the evidence was legally
insufficient to support the trial court's finding that it violated article 21.21 of the Texas Insurance
Code. Since the trial court did not award Lewis treble damages for the Company's violation, the
finding is moot. We overrule point of error two.

 We affirm the trial court judgment.